SO ORDERED.

Dated: September 12, 2024

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 11 Proceedings |
| | ) | |
| Thomas M. Connelly and | ) | Case No: 2:24-bk-00017-DPC |
| Nancee A. Connelly, | ) | |
| | ) | Adversary No. 2:24-ap-00070-DPC |
| Debtors. | ) | |
| Charles G. Haddad, Jr., | ) | **ORDER RE MOTION TO DISMISS** |
| | ) | **FIRST AMENDED COMPLAINT** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | (Not for Publication – Electronic |
| | ) | Docketing ONLY) |
| Thomas M. Connelly and | ) | |
| Nancee A. Connelly, | ) | |
| | ) | |
| Defendants. | ) | |

Before this Court is the motion ("Motion")[1] of Thomas M. Connelly ("Mr. Connelly") and Nancee A. Connelly ("Mrs. Connelly") (collectively the "Connellys" or "Defendants") to dismiss the First Amended Complaint ("FAC")[2] of Charles G. Haddad, Jr. ("Mr. Haddad" or "Plaintiff"). For the reasons stated below, the Motion is granted. Plaintiff is granted leave to further amend the FAC within 30 calendar days of the entry of this Order.

---

[1] Docket Entry ("DE") 16 in this adversary proceeding ("Adversary Proceeding").
[2] DE 14.

## I. BACKGROUND

On January 2, 2024 ("Petition Date"), Debtors filed their voluntary chapter 11 bankruptcy petition. Debtors timely commenced this two-count Adversary Proceeding seeking to hold non-dischargeable the sum of $500,000 plus interest which he claims is owed to him by Mr. Connelly and the marital community consisting of Mr. and Mrs. Connelly. The original complaint cited 11 U.S.C. §§ 523(a)(2)(A) and (6) as the statutory bases for declaring this claim non-dischargeable.

Plaintiff amended his complaint on June 17, 2024. Defendants filed their Motion on July 1, 2024, alleging a number of defects in the FAC noting, among other things, that the FAC must be dismissed because (1) Mr. Connelly's note executed in favor of Plaintiff is a non-recourse obligation, (2) Plaintiff's security interest was against future distributions from Natural Frosty (a valid Delaware company) and there have been no distributions to Mr. Connelly from Natural Frosty, (3) the alleged misrepresentations cannot be the basis of fraud because they were not made by Mr. Connelly to Plaintiff and the emails attached to the FAC do not demonstrate that such representations were actually facts as opposed to mere conclusions, or false statements, or even immaterial "facts," (4) that claims against Mrs. Connelly must be dismissed because there are no allegations of Mrs. Connelly's wrongful conduct and any of Mr. Connelly's wrongdoing cannot be implied to her, and (5) the Economic Loss Rule applies to bar a fraud claim for losses on an alleged claim for breach of a promissory note. Defendants also seek attorney's fees under A.R.S. § 12-341.01.

Plaintiff filed his response[3] ("Response") to the Motion and Defendants filed their reply[4] ("Reply"). Oral argument was held by the Court on August 5, 2024. This matter was taken under advisement on August 13, 2024.

---

[3] DE 18.
[4] DE 19.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).

## III. ISSUE

Should Plaintiff's FAC be dismissed pursuant to Bankruptcy Rule 7012?

## IV. ANALYSIS

### A. Motion to Dismiss Standard

Bankruptcy Rules 7008 and 7012 apply Rules 8 and 12 of the Federal Rules of Civil Procedure, respectively. Rule 8(a) states:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face . . . ."[5] A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[6]

Although detailed factual allegations are not required, a Rule 12(b)(6) dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient

---
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[6] *Iqbal*, 556 U.S. at 663.

facts to support a cognizable legal theory.[7] That said, "[w]hen ruling on a motion to dismiss, [the Court] accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[8]

### B. Pleading Standards for Fraud

In the Ninth Circuit, to establish fraud, a plaintiff must show:

(1) the debtor made ... representations;
(2) that at the time he knew they were false;
(3) that he made them with the intention and purpose of deceiving the creditor;
(4) that the creditor relied on such representations; [and]
(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.[9]

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[10] The plaintiff must plead "who, what, when, where, and how that would suggest fraud."[11] The circumstances constituting the alleged fraud must be specific enough to put the defendant on notice.[12]

---

[7] *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121 (9th Cir. 2008).
[8] "When ruling on a motion to dismiss, [the Court] accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).
[9] *In re Hashem*, 104 F.3d 1122, 1125 (9th Cir.1996) (quoting *In re Britton*, 950 F.2d 602, 604 (9th Cir.1991).
[10] Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.
[11] *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted).
[12] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## V. APPLICATION OF THE LAW TO THE ALLEGED FACTS

### A. Natural Frosty Is Not Registered With the Arizona Corporation Commission

Defendants' Motion refers to a promissory note from Mr. Connelly to Mr. Haddad attached as Exhibit B to the FAC and points out that Mr. Connelly's note is without recourse to him and, in any event, is secured by and to be paid only from income Mr. Connelly might otherwise be entitled to from Natural Frosty.

The Motion urges the Court to take judicial notice of the formation of Natural Frosty, LLC under the laws of Delaware. This suggestion is made to counter Plaintiff's allegations at ¶ 16 of the FAC where Plaintiff alleges "Natural Frosty was not ever registered with the Arizona Corporation Commission" and at ¶¶ 27 and 29 where it is alleged that . . . "Natural Frosty was [/is] not authorized to do business in Arizona . . . ." Paragraph 17 of the FAC reiterates this point.

The Court need not take judicial notice of Natural Frosty's Delaware formation because Plaintiff does not contend otherwise. Rather, Plaintiff only alleges Natural Frosty was and is not authorized to do business in Arizona. For the purposes of this Motion, the Court will assume these allegations are true. However, this allegation does little to advance Plaintiff's case because A.R.S. § 29-3901(c) notes:

> [t]he failure of a foreign limited liability company or a foreign series to register to do business in this state does not impair the validity of a contract or act of the foreign company or foreign series or preclude it from defending an action or proceeding in this state.

Natural Frost could contract with Plaintiff or otherwise do business in Arizona but would be barred from suing in this state unless it filed its papers to do business in Arizona.[13] Natural Frosty, of course, is not suing anyone in this Adversary Proceeding. More

---
[13] See A.R.S. § 29-3902(b).

5
Case 2:24-ap-00070-DPC    Doc 26    Filed 09/12/24    Entered 09/12/24 11:52:14    Desc
Main Document    Page 5 of 12

importantly, Plaintiff's FAC does not indicate how Natural Frosty's failure to register to do business in Arizona is a fact that supports its fraud or willful and malicious injury causes of action.

### B. The Non-Recourse Note and Security Interest

Defendants acknowledge a non-recourse note was signed in favor of Plaintiff and such note was secured by money Mr. Connelly would otherwise receive from Natural Frosty. However, Defendants indicate Natural Frosty paid nothing on account of Mr. Connelly's ownership interest in Natural Frosty so Plaintiff would not be entitled to any payments on the note. While this may or may not be true (as this "fact" is not alleged in the FAC), at oral argument Plaintiff's counsel made it clear that Plaintiff was not alleging a mere breach of the note. Rather, counsel argued, essentially, that Plaintiff was fraudulently induced to enter into the loan agreement memorialized by the note and security agreement/assignment.

This Court finds that the FAC must clarify the role the non-recourse note and security agreement/assignment play with Plaintiff's two causes of action. If Plaintiff claims fraudulent inducement, he should explicitly say so and must allege facts that support these allegations. Presently, the FAC is deficient in this regard or is at least confusing as to the role the note and security agreement/assignment play in the alleged fraud or willful injury claimed by Plaintiff.

### C. Representations vs. Conclusions vs. Facts

The FAC alleges that Mr. Connelly represented to Plaintiff that:

> a. Natural Frosty was entering into a Joint Venture Agreement with Revlon Cultivation for an "approved, zoned, and ready to outfit" cultivation facility;

> b. Natural Frosty's joint venture with Revlon Cultivation was most favorable to Natural Frosty and its investors.
> c. There was an existing relationship with a major entity (Curaleaf) to purchase the production;
> d. Natural Frosty had the brand "Subcool", which was one of the best in the industry; and
> e. Natural Frosty's joint venture partner was making a deal with Mike Tyson, "making our combined future joint venture a potential juggernaut in the industry.[14]

Plaintiff points to Exhibit D to the FAC as evidence of these representations. However, Exhibit D does not demonstrate that Mr. Connelly made any representations to Plaintiff. Exhibit D is an email from Mr. Connelly to a third party named Steve Finelli. Another third party named Jim Bullinger forwarded Mr. Connelly's email to Plaintiff nearly a month later. Nothing in Exhibit D shows that Mr. Connelly made these statements to Mr. Haddad or that he did so with the intent to deceive Plaintiff or that Mr. Connelly ever knew Plaintiff would receive the email.

Even if Exhibit D to the FAC could be construed as a series of representations to Plaintiff, the email states that the relationship between Revlon and Curaleaf was "contemplated" and not an existing reality as the FAC suggests. Similarly, the email states that other parties were in the process of "establishing a relationship with Mike Tyson."[15] Again, the email suggest a potential relationship with Tyson, not an actually formed relationship. Plaintiff alleges that "Natural Frosty not only did not have contracts in place to operate in an established [location], it also lacked a permitted location, license agreements with established brands, and buyers obligated to purchase Natural Frosty's products."[16] However, this conclusory statement does not suggest that these joint ventures were never contemplated nor in prospect. Instead, the FAC summarily

---
[14] DE 14 at page 2–3.
[15] DE 14, Exhibit D
[16] DE 14 at ¶15.

concludes that these representations were false and that Natural Frosty never conducted any business.[17] The falsity of the alleged representations must be pled with particularity, not conclusory statements.[18]

Plaintiff also alleges that he was to receive a 5% membership interest in Natural Frosty and that never occurred. However, Plaintiff does not allege that the failure to make him a 5% member actually has a causal connection to his damage. If a 5% membership interest in Natural Frosty was worthless or never produced a return to the member, the failure to make Mr. Haddad a member of Natural Frosty did not cause him harm and his fraud claim must fail.

The FAC contends Mr. Connelly never produced information reflecting what Mr. Connelly did with the $500,000 Plaintiff transferred to him. However, Plaintiff fails to reveal what duty Mr. Connelly had to do so nor why or how this fact advances his fraud or willful injury claims. What representations were made by Mr. Connelly to Mr. Haddad regarding the intended use of these proceeds? Were such representations false? Did Mr. Haddad reasonably rely on such representations, etc.?

At oral argument, counsel for Plaintiff stated that there may be other instances where Mr. Connelly made representations to Plaintiff, but such representations have not been sufficiently pled to provide notice to Defendants of when and where these representations occurred. Because Plaintiff has not alleged representations by Mr. Connelly to Mr. Haddad that were factually false, the FAC must be dismissed. However, leave to amend is granted to allow Plaintiff to allege other representations that may have been made directly by Mr. Connelly to Plaintiff which Plaintiff contends were false.

---

[17] DE 14 at ¶ 18.
[18] *Riverside Healthcare Sys., LP,* 534 F.3d at 1121.

### D. Claims Against Mrs. Connelly

Defendants contend that the FAC contains no allegations of wrongdoing by Mrs. Connelly so she should be dismissed from this Adversary Proceeding. Plaintiff contends Mrs. Connelly is named in the FAC simply to bind the Connelly's marital community. This Court has already entered an order resolving this issue.[19]

### E. The Economic Loss Rule

#### a. The Law of the Economic Loss Rule

Federal courts look to state courts' interpretation of the economic loss rule to determine its applicability.[20] In Arizona, the economic loss rule prohibits certain tort actions seeking "pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits."[21] The Arizona Supreme Court has applied this rule barring purely economic losses in the context of products liability and construction defects.[22] The Arizona Supreme Court further explained that "[t]he economic loss [rule] may vary in its application depending on context-specific policy considerations" and the policy of allowing tort remedies has to outweigh the contract policy of "upholding the expectations of the parties" and allocating risks in the contract.[23]

In *Cook v. Orkin Exterminating Co., Inc.*, the Arizona Court of Appeals rejected the "argument that the [economic loss rule] does not apply to [the plaintiffs'] fraud and

---

[19] See DE 24 entered September 3, 2024.
[20] *Evans v. Singer*, 518 F. Supp. 2d 1134, 1139 (D. Ariz. 2007) (citing *Powell v. Lambert*, 357 F.3d 871, 874 (9th Cir. 2004)).
[21] *Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 346 ¶ 8 (2013).
[22] *See Salt River Project Agr. Imp. & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 379, 694 P.2d 198, 209 (1984). *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz.320, 322 ¶ 10, (2010).
[23] *Flagstaff*, 223 Ariz. at 325.

misrepresentation claims."[24] In *Cook*, the plaintiff brought various tort claims including negligent and intentional misrepresentation and fraud after the defendant extermination company failed to eradicate termites from the plaintiff's home.[25] The court found the contract policy outweighed any policy to impose tort liability "[b]ecause the [plaintiffs] [were] seeking remedies for purely economic loss from [defendant's] alleged failure to adequately perform its promises under the [a]greement."[26] Therefore, the court found the economic loss rule barred the plaintiff's tort claims.[27]

In *Jes Solar Co., Ltd v. Matinee Energy, Inc.*, the Arizona Federal District Court distinguished *Cook* by explaining that in *Cook*, the plaintiffs had bargained for the risk that formed the basis of the claim because the extermination contract did not include any "promise to rid the house of termites or to pay for damage caused by new termite activity."[28] The court found that the economic loss rule did not apply in *Jes Solar Co.* because the plaintiff did not bargain for the risk that the defendant would steal the money invested and never put it to its intended use.[29]. Similarly, in *Martin v. Weed*, the Arizona Federal District Court found that the defendant had not bargained for the possibility that the plaintiff would use the company to pay personal expenses and the company would be left worthless.[30]

### b. Application to the Facts of this Case

Unlike the analysis above where Defendants are challenging the sufficiency of the pleading, here Defendants are arguing, even if the Court takes Plaintiff's facts as true,

---

[24] 227 Ariz. 331, 336 20 n.6 (Ariz. Ct. App. 2011).
[25] *Id.* at 332–333.
[26] *Id.* at 335.
[27] *Id.*
[28] 2015 WL 10943562 at *4 (Ariz. Dist. Ct. Nov. 2, 2015).
[29] *Id.* at 5
[30] 2018 WL 2431837 at *7 (Ariz. Dist. Ct. May 30, 2018).

relief would be barred by the economic loss rule. Taking Plaintiff's alleged facts as true, Mr. Connelly represented to Plaintiff that in return for a $500,000 investment, Plaintiff was going to receive a 5% interest in a company with established business relationships and brands. Plaintiff received the Promissory Note that directed some of the profits from Natural Frosty, LLC to be paid to Plaintiff to repay his initial investment but also provided that the Promissory Note was non-recourse as to Mr. Connelly. Defendant argues that Plaintiff bargained for the risks under the contract and must be held to contractual remedies meaning Mr. Connelly cannot be held liable. However, Plaintiff is not arguing that Mr. Connelly or any party failed to perform under the contract. Instead, Plaintiff is arguing that he would never have made the investment but for the allegedly fraudulent statements made by Mr. Connelly. Under the Note, it may be true that Plaintiff bargained for the risk that Natural Frosty would not be profitable, but he did not bargain for the risk that he was investing in a company with a much different financial condition than was stated. Plaintiff did not bargain for the risk that his $500,000 investment would not even be paid to the company. The general contract policy of upholding the parties' expectation under the contract does not outweigh the policy of imposing liability under tort because Plaintiff would not have been in the contract but for the alleged fraudulent contract. The economic loss rule does not bar Plaintiff's claims in this case.

### F. Attorneys' Fees

Defendants demand for attorney fees pursuant to A.R.S. § 12-341.01 is premature. The propriety of an award of fees in this Adversary Proceeding, if any, will be addressed by the Court at the conclusion of this Adversary Proceeding.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's FAC is hereby dismissed pursuant to Rule 7012 but Plaintiff is granted 30 days from entry of this Order to file its seconded amended complaint.

**IT IS ORDERED**

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties